439-01/DPM
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Petitioner A.P. MOLLER-MAERSK A/S
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Don P. Murnane, Jr. (DM 3639)
Manuel A. Molina (MM 1017)

RECEIVED FEB 28 2007 U.S.D.C. S.D. N.Y. CASHIERS

JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CV 1750

----------------------------------------------------------X

A.P. MOLLER-MAERSK A/S

                     Petitioner,

- against -

AGROWEST S.A., DOSVALLES S.A. AND
COMEXA S.A.

                     Respondents.

----------------------------------------------------------X

07-CV _____ ( )

**VERIFIED PETITION TO COMPEL ARBITRATION IN ACCORDANCE WITH ARBITRATION AGREEMENT**

Petitioner, A.P. MOLLER-MAERSK A/S (hereinafter, "Maersk"), by and through undersigned counsel, alleges upon information and belief as follows:

1. This is an admiralty and maritime action within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the jurisdiction of this Court pursuant to 28 USC §1333. This matter also concerns the Federal Arbitration Act, 9 U.S.C. §§1-208.

2. This Petition to disqualify Respondents' arbitral nominee is filed in accordance with the provisions of the Federal Arbitration Act, including but not limited to 9 U.S.C. §§4 and 5, which respectively provide in pertinent part as follows:

> §4. Failure to arbitrate under agreement...
> A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any

United States District Court...for an order directing that such arbitration proceed *in the manner provided for in such agreement*....

(Emphasis supplied.)

> §5. Appointment of arbitrators or umpire
> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, *such method shall be followed*....

(Emphasis supplied.)

## THE PARTIES

3. Petitioner Maersk, at and during all times hereinafter mentioned, was and still is a corporation duly organized and existing under and by virtue of the laws of Denmark with offices at Esplanaden 50, 1098 Copenhagen K, Denmark. A.P. MOLLER-MAERSK A/S was established in June of 2003 as the result of the merger between Dampskibsselskabet af 1912 Aktieselskab, and Aktieselskabet Dampskibsselskabet Svendborg, which prior to the merger conducted business under the trade name "A.P. Moller-Maersk Sealand". Maersk currently conducts business under the trade name "Maersk Line".

4. Respondent Agrowest S.A. (hereinafter "Agrowest"), at all times hereinafter mentioned, was and still is a corporation or other business entity organized and existing under and by virtue of the laws of Panama or another foreign country with an office and place of business at Calle 50, Torre/Edificio Dresdner Bank, Piso 8, Panama Ciudad, Panama.

5. Respondent DosValles S.A. (hereinafter "DosValles"), at all times hereinafter mentioned, was and still is a corporation or other business entity organized and existing under and by virtue of the laws of Panama or another foreign country with an office and place of business at Calle 50, Torre/Edificio Dresdner Bank, Piso 8, Panama, Panama Ciudad.

6. Respondent Comexa S.A. (hereinafter "Comexa"), at all times hereinafter mentioned, was and still is a corporation or other business entity organized and existing under and by virtue of the laws of Panama or another foreign country with an office and place of business at Via La Isla Barriada El Aserrio, Chitre, Provincia de Herrera, Panama, and Calle 50, Torre/Edificio Dresdner Bank, Piso 8, Panama, Ciudad Panama.

## THE SERVICE CONTRACT

7. On December 15, 2000, Petitioner Maersk (then d.b.a. "A.P. Moller-Maersk Sealand") entered into a marine Service Contract (No. 6591, on file with the Federal Maritime Commission) with Agrowest which called for ocean carriage of containerized fruit cargos from Peru to Europe and the United States aboard ocean going vessels pursuant to specific "Terms and Conditions" contained at Part II of the Service Contract. (A copy of the Service Contract is attached to the accompanying Declaration of Aogu Andrew Tsukamoto as "**Exhibit 1**")

8. The Service Contract provides at Part II Clause 16 that all disputes arising under the Service Contract between Maersk and Agrowest shall be submitted to arbitration at New York:

> **16. DISPUTES**
>
> In case of a dispute arising under or relating to this Contract, the Shipper [Agrowest] and MAERSK SEALAND each agree to submit the matter under dispute to arbitration in the City of New York or to such other location as the parties may agree. Either party hereto may call for aribration by giving notice thereof in accordance with Article 14 of this Contract. Each party shall appoint an arbitrator. In the event either party fails to appoint as arbitrator within twenty (20) days, the other party, without further notice may appoint a second arbitrator with the same force and effect as if said second arbitrator had been appointed by the other party. The two arbitrators so chosen shall select a third arbitrator.

The three arbitrators are to be commercial men familiar with ocean shipping. In the event the two arbitrators so chosen are unable to agree upon the appointment of a third arbitrator within thirty (30) days, the third arbitrator shall be appointed by the Society of Maritime Arbitrators. The decision of a majority of the arbitrators shall be binding on the parties. The arbitration shall be held under and pursuant to the terms and procedures of the United States Arbitration Act and in accordance with the rules of the Society of Maritime Arbitrators. The award made in pursuance to this article may include attorney's fees and expenses and judgment may be entered upon any award hereunder in a court of competent jurisdiction.

9. The Service Contract also includes the following law selection clause:

17.   APPLICABLE LAW

This Contract shall be subject to the Ocean Shipping Reform Act of 1998 and shall otherwise be construed and governed by the laws of the State of New York.

## SUIT BY RESPONDENTS AT PANAMA

10. During performance of the Service Contract, various disputes arose between Agrowest and Maersk.

11. On or about July 4, 2002, Agrowest, acting through its local Panamanian counsel in Panama City, Panama, together with DosValles and Comexa, commenced suit in the Second Maritime Court of Panama, which resulted in the arrest of a Maersk vessel, the M/V MAYVIEW MAERSK, which was, at the time, transiting the Panama Canal. The lawsuit alleged damages and associated costs and interest totaling $5,849,614.71.

12. Under a reservation of rights, including but not limited to the defense that the dispute was subject to the Service Contract arbitration clause, Maersk arranged for the posting of security in the full amount demanded, and the vessel was released.

13. Maersk, through its own Panamanian counsel, appeared in the Panama suit and answered, denying any and all liability. Maersk also raised in the Panama proceedings the affirmative defense that all claims were subject to arbitration at New York citing the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, to which Panama is a signatory.

14. On September 20, 2002, Maersk notified Agrowest that it intended to counterclaim for breach of the Service Contract as a result of the wrongful prosecution of the legal proceedings in Panama and appointed as its arbitrator Mr. James E. Mercante.

15. Agrowest rejected the demand by Maersk for arbitration but appointed an arbitrator, Mr. J. David Stark of J.D. Stark & Associates, Inc., Brooklyn, N.Y., as its arbitrator.

## THE PANAMA SUPREME COURT DECISIONS

16. Thereafter, over the next three plus years, the issue of the arbitrability of the Agrowest, DosValles and Comexa claims was litigated before the Panama courts. After trial and an appeal, the Panama Supreme Court, in a lengthy decision dated June 1, 2005, held that Respondents' claims were all subject to arbitration at New York. The Panama Supreme Court ordered that the matter should immediately be remitted to arbitration at New York and enjoined the Second Maritime Court of Panama from hearing the parties' disputes. A translation of the Court's decision as obtained by Maersk's Panamanian attorneys Messrs. Morgan & Morgan, is annexed hereto as "**Exhibit A**".

17. Various post-decision motions were filed with the Panama Supreme Court seeking clarification of the court's order. These motions resulted in a further order confirming that although DosValles and Comexa had (unlike Agrowest) not signed the Service Contract,

their claims were also subject to New York arbitration. The Panama Supreme Court specifically found that DosValles and Comexa had pled and admitted before the Panamanian courts that they each constituted an "integral part of a *de facto* Commercial Association with Agrowest" and each other respectively, and that they were "all devoted to the production and export of agricultural products" in connection with the Maersk Service Contract. A copy of a translation of the Panama Supreme Court's clarifying order as obtained by Messrs. Morgan & Morgan is annexed hereto as "**Exhibit B**".

18. Following final resolution of the issues by the Panama Supreme Court, Maersk applied for an award for costs and attorneys' fees which was granted on December 13, 2006 by the Second Maritime Court in a total amount of USD $208,512.23. Respondents' only current appeal in Panama is the award of costs and attorneys' fees. That appeal of the costs and fees award, though, has no impact on the finality of the Panama Supreme Court's decision ordering Respondents to proceed to arbitrate at New York.

## RESPONDENTS' WRONGFUL APPOINTMENT OF J.D. STARK AS ARBITRATOR

19. Respondents' arbitral nominee, Mr. Stark, had previously represented Agrowest as an advocate for Agrowest's claims against Maersk in this matter in settlement discussions which had been conducted at Maersk's offices in Madison, New Jersey on August 15, 2001, roughly eleven months prior to Respondents' commencement of legal proceedings at Panama.

20. As Agrowest's representative, Mr. Stark had also met on numerous occasions with Agrowest's President, Manuel Haito, and with Agrowest's New York attorneys, and had obtained during these discussions detailed information on the nature of the dispute.

21. By telefax dated October 15, 2002, Maersk's Mr. Tsukamoto wrote to Agrowest advising, *inter alia*, that the rejection of Maersk's demand for arbitration by Agrowest was improper and that Agrowest's appointment of Mr. Stark was invalid under the Service Contract because Mr. Stark had previously acted as Agrowest's representative in advocating their claims during prior discussions with Maersk. Mr. Tsukamoto's letter stated specifically:

> "2. Mr. Stark's Conflict of Interest and Bias.
>
> On August 15, 2001, you and Mr. Stark **as your representative**, together with three New York attorneys on your behalf (attorneys Clark, Reisert and McConnell) met with us in our offices to present the subject claims. Because Mr. Stark personally participated in the meetings as your advocate and representative, he is biased and predisposed in your favor and cannot be impartial. Accordingly, your appointment of Mr. Stark has no legal effect under applicable governing law. We call upon you immediately to withdraw your nomination of Mr. Stark and to appoint a substitute nominee who is neutral in the matter and suitably qualified to serve.

(Tsukamoto Decl. at ¶ 16).

22. To date, Respondents have refused to agree to the withdrawal of Mr. Stark as their arbitral nominee, and Mr. Stark has failed to voluntarily withdraw as arbitrator.

23. The arbitration clause contained in the Service Contract specifically states that the arbitration is to be held "in accordance with the Rules of the Society of Maritime Arbitrators". Annexed hereto as **"Exhibit C"** is a true and correct copy of the Society of Maritime Arbitrators, Inc. ("SMA") Rules which can be independently verified at the SMA website, http://www.smany.org.

24. Part I § 1 of the SMA Rules clearly and definitively states:

> Wherever parties have agreed to arbitration under the Rules of The Society of Maritime Arbitrators Inc., **these Rules**, including any amendment(s) in force on the date of the agreement to arbitrate,

> **shall be binding on the parties and constitute an integral part of that agreement.**

(Emphasis supplied).

25. The incorporation of the SMA Rules into the Service Contract made each of the SMA Rules a specific term of the Service Contract between Maersk and Agrowest.

26. Section 8 of the SMA Rules states unequivocally that:

> **No person shall serve as an arbitrator…who has acquired from an interested source detailed prior knowledge of the matter in dispute.**

(Emphasis supplied).

27. Accordingly, a pre-condition to service as an arbitrator in deciding disputes under the Service Contract was that such arbitrator **would not have acquired detailed prior knowledge of the matter in dispute from an interested source.**

28. Mr. Stark, having undeniably served as a representative of Agrowest in detailed discussions of the merits of the disputes with Agrowest's Mr. Haito, Respondents' attorneys, and with Maersk during the meeting on August 15, 2001, clearly had obtained detailed prior knowledge of the matter in dispute from Agrowest, an interested source. Mr. Stark is therefore *per se* ineligible under the SMA Rules to serve as an arbitrator with regard to the arbitration of the parties' disputes.

29. Respondents' nomination of Mr. Stark as their arbitrator in this dispute is invalid and Respondents are therefore required to appoint a substitute arbitrator who is qualified under the Terms and Conditions of the Service Contract arbitration clause within twenty (20) days, failing which Petitioner is entitled to appoint an arbitrator on behalf of Respondents per the arbitration clause.

30.  Because Respondents' failure to comply with the unequivocal agreement of the parties has necessitated the making of this application, Petitioner should be awarded the costs and attorneys' fees incurred in making this Petition.

31.  Petitioner has duly performed all its obligations in accordance with the Terms and Conditions of the governing Service Contract.

32.  No previous application has been made to this court or to any other court or judge for the orders and relief sought herein.

WHEREFORE, Petitioner prays that this Honorable Court enter an Order:

(1)  directing that Respondents proceed immediately to arbitration in accordance with the arbitration agreement contained in the parties' Service Contract agreement dated December 15, 2000;

(2)  disqualifying Respondents' arbitral nominee, J. David Stark, from serving as arbitrator in the subject proceedings;

(3)  requiring Respondents within twenty (20) days of the court's order to appoint a substitute arbitral nominee having no prior knowledge of the facts of the dispute in accordance with the arbitration agreement contained in the Service Contract failing which Petitioner will be permitted to appoint an arbitrator on Respondents' behalf;

(4)  ordering Respondents to pay Petitioner its costs and attorneys' fees incurred in connection with this Petition; and

(5)     granting such other, further and different relief as the court may deem just and proper in the premises.

Dated: New York, New York
       February 28, 2007

                           FREEHILL HOGAN & MAHAR, LLP
                           Attorneys for Petitioner
                           A.P. MOLLER-MAERSK A/S

By:  _____
     Don P. Murnane, Jr. (DM 3639)
     Manuel A. Molina (MM 1017)
     80 Pine Street
     New York, NY  10005
     (212) 425-1900
     (212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York   )
                           ) ss.:
County of New York )

DON P. MURNANE, JR. being duly sworn deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Petitioner A.P. MOLLER-MAERSK A/S in this action. I have read the foregoing Petition and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are statements and records furnished to me by the Petitioner, its officers, attorneys and agents.

3. The reason this verification is made by an attorney and not by the Petitioner is because the Petitioner is a corporation, none of whose officers are presently within this District.

                                                              _____
                                                              /Don P. Murnane, Jr.

Sworn to before me this
____ day of February 2007

_____
     Notary Public