439-01/DPM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
A.P. MOLLER-MAERSK A/S,

                                     Petitioner,

    - against -

AGROWEST S.A., DOSVALLES S.A. AND
COMEXA S.A.,

                                    Respondents.
-------------------------------------------------------------------x

JUDGE BATTS

07 CV 1750

07 CV _____ ( )


## MEMORANDUM OF LAW IN SUPPORT OF PETITION TO COMPEL ARBITRATION


FREEHILL HOGAN & MAHAR, LLP
Attorneys for Petitioner
A.P. MOLLER-MAERSK A/S
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Of Counsel
Don P. Murnane, Jr. (DM 3639)
Manuel A. Molina (MM 1017)

NYDOCS1/278812.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..ii

PRELIMINARY STATEMENT……………………………..……………………….1

FACTS…………………………………………………………..………………….2


ARGUMENT

    POINT I

    THIS COURT HAS JURISDICTION OVER THE
    INSTANT PETITION AND RESPONDENTS…………...........................4

    POINT II

    THE F.A.A. REQUIRES ENFORCEMENT OF
    ARBITRATION AGREEMENTS IN ACCORDANCE
    WITH THEIR TERMS………………………………………………………….6

    POINT III

    A SPECIFIC TERM OF THE SUBJECT AGREEMENT
    TO ARBITRATE IS THAT NO PERSON MAY SERVE AS
    AN ARBITRATOR WHO HAS ACQUIRED FROM AN
    INTEREST SOURCE DETAILED PRIOR KNOWLEDGE OF
    THE MATTER IN DISPUTE …………………………………………………..8

    POINT IV

    RESPONDENTS' APPOINTMENT OF MR. STARK TO SERVE
    AS THEIR ARBITRAL NOMINEE CONSTITUTES A BREACH OF
    THE AGREEMENT TO ARBITRATE AND GIVES RISE TO A
    CAUSE OF ACTION UNDER §§4 AND 5 OF THE F.A.A. AND
    ALTERNATIVELY UNDER §10 OF THE F.A.A…….…..……………….11

    POINT V

    MAERSK IS ENTITLED TO ATTORNEYS' FEES…………………14

CONCLUSION…………..……………………………………………………….15

# TABLE OF AUTHORITIES

## CASES

American Bureau of Shipping v. Tencara Shipyard S.p.A.,
170 F.3d 349 (2d Cir. 199)..................................................................................................5

Aviall, Inc. v. Rider System Inc.,
110 F.3d 892 (2d Cir. 1997).......................................................................................... 11, 12

Aviall, Inc. v. Ryder System, Inc.,
913 F. Supp. 826 (S.D.N.Y. 1996) ......................................................................................12

Coenen v. R.W. Pressprich & Co.,
453 F.2d 1209 (2d Cir. 1972)...............................................................................................6

Cristina Blouse Corp. v. Int'l Ladies Garment Workers' Union, Local 162,
492 F. Supp. 508 (S.D.N.Y. 1980 .......................................................................................12

Diemaco, A Div. of Devtek Corp. v. Colt's Mfg. Co., Inc.,
11 F. Supp. 2d 228 (D.Conn. 1998) .....................................................................................7

Eastern Fish Co. v. South Pacific Shipping Co. Ltd.,
105 F. Supp. 2d 234 (S.D.N.Y. 2000) ...................................................................................5

Erving v. Virginia Squires Basketball Club,
349 F. Supp 716 (E.D.N.Y.), aff'd, 468 F.2d 1064 (2d Cir. 1972)..........................................12

Glencore, Ltd v. Schnitzer Steel Prods. Co.,
189 F. 3d 264 (2d Cir. 199)..................................................................................................6

Ingersoll Milling Machine Co. v. M/V Bodena,
829 F.2d 293 (2d Cir. 1987)...............................................................................................14

In re Salomon Inc. Shareholders Derivative Litigation,
68 F.3d 554 (2d Cir. 1995)...................................................................................................9

Kassan Courier Service, Inc. v. Maersk, Inc.,
No. 02-20879, 2002 U.S. Dist. Lexis 27299 (S.D. Fl. Oct. 23, 2002)......................................5

Kaystone Chemical, Inc. v. BOW SUN,
No. 88-5859, 1989 U.S. Dist. Lexis 4384 (S.D.N.Y. April 19, 1989)........................................8

Maria Victoria Naviera SA v. Cementos Del Valle SA,
759 F. 2d 1027 ( 2d Cir. 1985).............................................................................................11

Masthead Mac Drilling Corp. v. Fleck,
559 F. Supp. 854 (S.D.N.Y. 1980) .................................................................................. 12

Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse,
996 F.2d 506 (2d Cir. 1993) ............................................................................................ 14

Merrill Lynch, Pierce Fenner & Smith Inc. v. Georgiadis,
903 F.2d 109 (2d Cir. 1990) ......................................................................................... 6, 7

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos,
553 F.2d 842 (2d Cir. 1977) ............................................................................................ 5

Metropolitan Property and Casualty Ins. Co. v. J.C Penney Casualty Ins. Co.,
780 F. Supp. 885 (D. Conn. 1991) ............................................................................ 12, 13

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
473 U.S. 614 (1985) ......................................................................................................... 6

Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,
460 U.S. 1 (1983) ............................................................................................................. 6

Mutual Marine Office, Inc. v. Ins. Corp. of Ireland,
No. 04-8952, 2005 U.S. Dist. LEXIS 11584 (S.D.N.Y. April 13, 2005) ......................... 7

Pemex-Refinacion v. Tbilisi Shipping Co. Ltd.,
No. 04-2705, 2004 U.S. Dist. Lexis 17478 (S.D.N.Y. Aug. 31, 2004) ............................ 7

Reed & Martin, Inc. v. Westinghouse Electric Corp.,
439 F.2d 1208 (2d Cir. 1971) ........................................................................................... 8

Scherk v. Alberto-Culver Co.,
417 U.S. 506 (1974) ......................................................................................................... 6

Seguros Banvenez, S.A. v. S/S Oliver Drescher,
761 F.2d 855 (2d Cir. 1985), *cert. denied*, 484 U.S. 1042 (1988)) .............................. 14

Southland Corp. v. Keating,
465 U.S. 1 (1984) ............................................................................................................. 6

Vaughan v. Atkinson,
396 U.S. 527 (1962) ................................................................................................. 14, 15

## STATUTES

*Federal Arbitration Act*, 9 U.S.C. §§ 1-208 ........................................................................ 1

*Federal Arbitration Act*, 9 U.S.C. §2 ............................................................................... 4, 5

*Federal Arbitration Act*, 9 U.S.C. §4 .................................................................... 4, 6, 11, 13

*Federal Arbitration Act*, 9 U.S.C. §5 .................................................................... 4, 7, 11, 13

*Federal Arbitration Act*, 9 U.S.C. §10 ................................................................ 4, 11, 12, 13

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in support of the Petition by A.P. MOLLER-MAERSK A/S (hereinafter, "Maersk") for an order, pursuant to the Federal Arbitration Act 9 USC §§ 1-208 (hereinafter the "Act" or "F.A.A."), directing, *inter alia*, that Respondents AGROWEST S.A., DOSVALLES S.A. and COMEXA S.A. (hereinafter "Respondents") appoint, within twenty days, an arbitrator pursuant to the parties' express agreement to arbitrate, failing which Maersk should be permitted to appoint an arbitrator on Respondents' behalf.

Section 4 of the F.A.A. permits "a party aggrieved by the...failure, neglect or refusal of another to arbitrate under a written agreement for arbitration to petition any U.S. district court... for an order directing that such arbitration proceed *in the manner provided for in such agreement*". As significant, Section 5 of the F.A.A. prescribes that, **[i]f in the agreement provision be made for a method of naming an arbitrator or arbitrators or an umpire, such method shall be followed. . . ."** Petitioner Maersk and Respondent Agrowest entered into a Service Contract that contains an arbitration provision requiring them to submit all disputes to arbitration at New York, with the Rules of the Society of Maritime Arbitrators, Inc. ("SMA") to apply. Respondents have, in violation of Sections 4 and 5 of the Act, refused and otherwise failed to proceed to arbitration in the manner provided for in the arbitration agreement between the parties in that they have, contrary to the SMA Rules, appointed an arbitrator who is plainly disqualified from serving as arbitrator because he acquired from an interested source detailed prior knowledge of the matters in dispute.

Accordingly, Maersk respectfully requests that this Court direct Respondents to appoint an arbitrator who satisfies the parties' agreement to arbitrate, as embodied in the SMA Rules, and award Petitioner its costs and fees in respect to this application.

## FACTS

The Court is respectfully referred to the accompanying Verified Petition, the Declaration of Maersk's Senior Director and Counsel for Risk & Claims Management, Mr. Aogu Andrew Tsukamoto ("Tsukamoto Decl."), and the Affidavit of Don P. Murnane, Jr. ("Murnane Aff.") for a full statement of the facts underlying this Petition. In the interest of brevity, the facts are summarized as follows:

On December 15, 2000, Maersk entered into a marine Service Contract (No. 6591 on file with the Federal Maritime Commission) with Respondent Agrowest which called for certain periodic ocean carriage of containerized fruit cargos from Peru to Europe and the United States aboard ocean going vessels (Petition ¶7; Tsukamoto Decl., ¶2). During performance of the contract various disputes arose between the parties. Part II of the Service Contract contained specific terms and conditions, including Clause 16, which required disputes arising under the contract to be submitted to arbitration at New York before three arbitrators, one appointed by each side, with the two so chosen appointing a third (Petition ¶8; Tsukamoto Decl., ¶2). Clause 16 specifically required that "the Arbitration shall be held...in accordance with the rules of the Society of Maritime Arbitrators" (Id.). Section 1 of the SMA Rules, in turn, states that "wherever parties have agreed to arbitration under the Rules of the Society of Maritime Arbitrators Inc., these Rules...shall be binding on the parties and constitute an integral part of that agreement" (Petition ¶¶23, 24). The SMA Rules thus constitute specific incorporated terms and conditions of the contractual agreement to arbitrate between the parties. Section 8 of the SMA Rules further states that "[n]o person shall serve as an arbitrator...**who has acquired from an interested source detailed prior knowledge of the matter in dispute.**" (Petition ¶¶23, 26).

After the Service Contract disputes arose, a lengthy meeting was held at Petitioner Maersk's offices in Madison, New Jersey on August 15, 2001. Mr. Tsukamoto attended the

NYDOCS1/278863.1                                          2

meeting on behalf of Maersk and Respondents were represented by Agrowest's President, Mr. Manuel Haito, a team of three lawyers and a fifth man, Mr. J. David Stark of Stark & Associates Limited. The nature of the disputes was discussed in lengthy detail. Throughout the meeting, Mr. Stark was present as a representative on behalf of Agrowest and Mr. Haito and assisted in advocating Agrowest's position in the matter. (Petition ¶¶19-21, 28, Tsukamoto Decl., ¶¶5-18).

The disputes could not be resolved, and roughly a year later, on July 4, 2002, Respondents arrested the M/V MAYVIEW MAERSK at Panama and commenced legal proceedings against Petitioner in Panama seeking nearly $6 million in purported damages. (Petition ¶¶10-15). A more than three-year litigation ensued in Panama in which Maersk was ultimately successful in having the lawsuit stayed pending New York arbitration pursuant to Clause 16 of the Service Contract. Costs and fees were awarded to Maersk in excess of $200,000. (Petition¶¶16-18).

After commencement of the 2002 Panamanian proceedings by Respondents Maersk by letter dated, September 20, 2002, demanded arbitration of the disputes at New York and appointed as its arbitrator, Mr. James Mercante of New York.[1] (Petition ¶14; Tsukamoto Decl., ¶14). Agrowest subsequently, while "rejecting" Maersk's demand for arbitration, conditionally appointed as its arbitrator Mr. Stark, notwithstanding that Mr. Stark had clearly acquired from Mr. Haito, Agrowest and their lawyers detailed prior knowledge of the matters in dispute. (Petition Tsukamoto Decl., ¶¶15-16).

During the litigation in Panama, Respondents submitted to the Court as attachments to their Complaint various invoices of their New York counsel which detail extensive meetings conducted between Mr. Stark, counsel and Mr. Haito pertaining to the nature and prosecution of Respondents' claims. (Petition ¶¶19-20; Tsukamoto Decl., ¶¶4-5). These notes establish conclusively that Mr. Stark obtained detailed factual information relating to the subject disputes

---

[1] Respondents have raised no objection to Mr. Mercante serving as an arbitrator.

NYDOCS1/278863.1                              3

from Respondents prior to his appointment as Respondents' arbitral nominee on October 9, 2002. (Id.). Indeed, although it is not necessary to demonstrate bias on the instant petition under F.A.A. §§4 and 5, this evidence would be sufficient to establish Mr. Stark's bias which would satisfy a challenge under F.A.A. §10.[2]

Maersk is prepared to move forward with the New York arbitration, but before doing so seeks this Court's intervention on the ground that Respondents' appointment of Mr. Stark constitutes a clear breach of the parties' arbitration agreement, and that proceeding to arbitrate before any Panel in which Mr. Stark is an arbitrator would not constitute arbitration "in the manner provided for in [the] agreement," under F.A.A. Section 4 or compliance with the requirements for naming an arbitrator under F.A.A. Section 5. Petitioner is thus entitled to the relief sought herein. Accordingly, this Court should direct Respondents to, within twenty days, nominate an arbitrator who is fit to serve and has no prior knowledge of the dispute and failing such timely appointment by Respondents, permit Maersk to then nominate an arbitrator on Respondents' behalf in accordance with the terms of the arbitration clause. Maersk should also be awarded its attorneys' fees and costs in connection with this Petition given Respondents' unreasonable intransigence in refusing to withdraw their improperly nominated arbitrator.

## ARGUMENT

### Point I

### THIS COURT HAS JURISDICTION OVER THE INSTANT PETITION AND RESPONDENTS

The F.A.A. states that a "maritime transaction or contract" containing a written provision to settle by arbitration a controversy arising out of such contract "shall be valid, irrevocable, and

---

[2] For the avoidance of any doubt, Maersk also petitions to disqualify Mr. Stark due to his evident partiality on behalf of Respondents and submits that Mr. Stark's evident bias provides an alternative ground either for his removal as arbitrator, or in the alternative, for setting aside any award or portion thereof rendered against Maersk in which Mr. Stark participates. Maersk thus also reserves any and all rights to remove Mr. Stark as arbitrator or to set aside an award pursuant to F.A.A. Section 10.

NYDOCS1/278863.1                                   4

enforceable." 9 U.S.C. §2. Similarly, the F.A.A., in providing for enforcement of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, prescribes at §206 that a court having jurisdiction under this chapter may direct that arbitration be held "in accordance with the agreement...." A maritime "Service Contract" such as the one at issue herein, which calls for the periodic shipment aboard ocean going vessels of containerized cargo, is a quintessentially "maritime transaction or contract" within the meaning of the Act, and this court therefore has subject matter jurisdiction to entertain the instant Petition. *See, e.g.* Eastern Fish Co. v. South Pacific Shipping Co. Ltd., 105 F. Supp.2d 234, 236-38 (S.D.N.Y. 2000) (finding jurisdiction to compel parties to arbitrate pursuant to terms of a service contract); Kassan Courier Service, Inc. v. Maersk, Inc., No. 02-20879, 2002 U.S. Dist. Lexis 27299 *4-6 (S.D. Fl. Oct. 23, 2002) (finding that service contracts are governed by the Shipping Act, 46 U.S.C. § 1701 *et seq.*, which in turn gives federal courts original jurisdiction over new disputes under either 28 U.S.C. §1337(a) or the F.A.A.).

By order of the Panama Supreme Court, exercising its own obligation to enforce the provisions of the New York Convention, Respondents have been ordered to proceed to arbitration here in New York in accordance with Clause 16 of the Service Contract.

Finally, Respondents are subject to the personal jurisdiction of this court by virtue of their having agreed to submit disputes to arbitration in New York. American Bureau of Shipping v. Tencara Shipyard S.p.A., 170 F.3d 349, 352 (2d Cir. 199) ("[i]t is well-settled that federal courts applying New York law have personal jurisdiction over parties that agree to arbitrate their disputes in New York"), *citing* Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos, 553 F.2d 842, 844 (2d Cir. 1977). With respect to service of process, the SMA Rules, which form part of the agreement to arbitrate, permit service of the instant petition by mail or personal service. (SMA Rules Section 35; Petition ¶23).

NYDOCS1/278863.1                              5

Point II

THE F.A.A. REQUIRES ENFORCEMENT
OF ARBITRATION AGREEMENTS
IN ACCORDANCE WITH THEIR TERMS

In enacting the F.A.A., Congress declared a national policy favoring arbitration. Southland Corp. v. Keating, 465 U.S. 1 (1984). The Supreme Court has specifically found that there is a strong federal policy favoring arbitration and that arbitration agreements must be enforced in accordance with their terms. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19-20 (1983); Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 (1974); and Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985).

The F.A.A. instructs courts to enforce all the terms of such agreements. Section 4 provides as follows:

> A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court…for an order directing that such arbitration proceed *in the manner provided for in such agreement*….The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement.*

Once a dispute is covered by the F.A.A., "federal law applies to all questions of interpretation construction, validity, revocability, and enforceability." Coenen v. R.W. Pressprich & Co., 453 F.2d 1209, 1211 (2d Cir. 1972). Arbitrations must be held in the manner provided for in the agreement and in accordance with the terms of the agreement, and the court is not free to vary these terms. Glencore, Ltd v. Schnitzer Steel Prods. Co., 189 F. 3d 264 (2d Cir. 199) (holding that because arbitral agreement did not provide for consolidated hearings, court was without authority to order same), Merrill Lynch, Pierce Fenner & Smith Inc. v. Georgiadis, 903 F.2d 109

NYDOCS1/278863.1                        6

(2d Cir. 1990) (where customer agreement foreclosed options to arbitrate before certain arbitral fora, including the American Arbitration Association, the Court was without authority to order the parties to AAA arbitration); Pemex-Refinacion v. Tbilisi Shipping Co. Ltd., No. 04-2705, 2004 U.S. Dist. Lexis 17478 (S.D.N.Y. Aug. 31, 2004) (since arbitral agreement did not provide for appointment of substitute arbitrator in the event of death of one of the arbitrators, Court was without authority to order substitution and instead directed the parties to start anew).

Further, Section 5 of the F.A.A. reinforces Maersk's position that Respondents must strictly comply with the provisions of the relevant arbitration agreement when appointing their arbitrator. Section 5 prescribes in no uncertain terms that, "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method *shall be followed*...." (emphasis supplied). See also Mutual Marine Office, Inc. v. Ins. Corp. of Ireland, No. 04-8952, 2005 U.S. Dist. LEXIS 11584, *6 (S.D.N.Y. April 13, 2005) (Sections 4 and 5 of the F.A.A. provide court's authority to direct parties to proceed to arbitration in manner agreed upon by them). Indeed, "if the method agreed upon by the parties for naming an arbitrator is explicit and unambiguous . . . it must be given controlling effect." Diemaco, A Div. of Devtek Corp. v. Colt's Mfg. Co., Inc., 11 F. Supp. 2d 228 (D.Conn. 1998); Mutual Marine, 2005 U.S. Dist. LEXIS 11584, *7 ("courts must focus on the agreed upon terms of the arbitration provision when confronted with an arbitration related dispute"). As discussed more fully in Points III-IV hereinbelow, given that Respondents have violated the explicit and unambiguous method for appointing their arbitrator, this Court should direct Respondents to appoint an arbitrator in conformity with the arbitration agreement entered into with Maersk.

**Point III**

**A SPECIFIC TERM OF THE SUBJECT AGREEMENT
TO ARBITRATE IS THAT NO PERSON MAY SERVE
AS AN ARBITRATOR WHO HAS ACQUIRED FROM AN INTERESTED
SOURCE DETAILED PRIOR KNOWLEDGE OF THE MATTER IN DISPUTE**

The Service Contract calls for application of New York law (Clause 17), which provides that parties may freely incorporate by reference as terms and conditions, regulations, rules, or other particulars which become an integral part of the agreement as if they had been specifically set forth therein. *See e.g.* Kaystone Chemical, Inc. v. BOW SUN, No. 88-5859, 1989 U.S. Dist. Lexis 4384 (S.D.N.Y. April 19, 1989).

Here, the parties specifically incorporated the SMA Rules, and hence agreed (per SMA Rules Section 1) that each of the SMA Rules would constitute a term and condition of the agreement to arbitrate. Further, pursuant to Section 8 of the SMA Rules, neither party was allowed to appoint an arbitrator who had acquired from an interested source detailed prior knowledge of the matter in dispute.

> Section 1 of the SMA Rules provides:
>
> > Wherever parties have agreed to arbitration under the Rules of the Society of Maritime Arbitrators, Inc., **these Rules...shall be binding on the parties and constitute an integral part of that agreement.**

(Emphasis supplied.)

A nearly identical provision in the Rules of the American Arbitration Association was found by the Second Circuit to have been properly incorporated into an arbitration agreement in Reed & Martin, Inc. v. Westinghouse Electric Corp., 439 F.2d 1208, 1273 (2d Cir. 1971) (the court confirmed that the portion of the incorporated arbitral rules that permitted the arbitral body to select both an umpire and the place in which the arbitration would be held were enforceable as terms of the arbitration agreement between the parties).

NYDOCS1/278863.1                                 8

The question of who may arbitrate disputes between the parties, "being a question of 'interpretation and construction', is governed by federal law." Coenen, 453 F.2d at 1212; In re Salomon Inc. Shareholders Derivative Litigation, 68 F.3d 554, 559 (2d Cir. 1995) (accord). Here, the SMA Rules contain a specific section which provides that certain persons may not serve as arbitrators at all. Section 8 unambiguously states that "no person shall serve as arbitrator who has acquired from an interested source detailed prior knowledge of the matter in dispute." The facts show clearly that Respondent's arbitral nominee, Mr. Stark, did acquire detailed knowledge of the matter in dispute from Respondents prior to his appointment.

Mr. Stark's activities fall squarely within the SMA Rules Section 8 prohibition against acquiring detailed prior knowledge about the matter in dispute. Maersk's evidence of Mr. Stark's obtaining such detailed prior knowledge is clear, convincing and irrefutable. The evidence consists of two main categories: (1) Mr. Stark's meeting at Maersk's New Jersey offices about a year before the commencement of the Panama proceedings; and (2) Respondents' New York attorneys' time notes (submitted into evidence by Respondents in the Panama proceedings) which establish extensive meetings and telephone discussions between Mr. Stark, Agrowest's President, Mr. Haito, and Agrowest's counsel prior to the meeting at Maersk's New Jersey offices.

During the August 15, 2001 meeting at Maersk's offices in Madison, New Jersey, Mr. Stark, on behalf of Agrowest, met with Maersk for several hours in an attempt to resolve the matters in dispute between the parties. Mr. Stark was accompanied at that meeting by Agrowest's President, Mr. Haito, and by three attorneys for Agrowest. At the meeting, Mr. Stark demonstrated a detailed knowledge of the matters in dispute, the origin of which was Agrowest, and Mr. Haito himself. Agrowest and Mr. Haito are clearly both interested sources. (Tsukamoto Declaration, ¶¶6-7).

In the subsequent Panama proceedings, Respondents submitted time notes from their New York attorneys, Clark, Atcheson & Reisert, who had also attended the August 15, 2001 meeting at

Maersk. Those time notes conclusively reveal that Mr. Stark had several meetings and telephone calls with Respondents' attorneys and Mr. Haito for the purpose of discussing the details of Respondents' claims. The time notes show that those meetings and phone calls with Mr. Stark preceded the meeting at Maersk's New Jersey offices in August 2001 and Mr. Stark's appointment by Respondents on October 9, 2002. (Murnane Aff., ¶5, Exs. 95, 98 and 99). The time notes persuasively illustrate that Mr. Stark extensively discussed with Mr. Haito and Respondents' counsel the particular factual and legal basis of Respondents' claims against Maersk as well as planned the concerted strategy Respondents would follow in presenting their claims to Maersk. Significantly, Mr. Stark was a member of Respondents' team at the August 15, 2001 meeting with Maersk and vigorously advocated Respondents' position. (Tsukamoto Decl., ¶¶6-7).

On this evidence, it is beyond any serious challenge that Mr. Stark acquired from Respondents and/or their attorneys, interested sources, detailed prior knowledge of the matter in dispute. The SMA Rules are clear in prohibiting persons in Mr. Stark's position from serving as arbitrator. Respondents' appointment of Mr. Stark, in clear violation of SMA Rule 8, is yet another illustration of Respondents' campaign to deliberately subvert the parties' arbitration agreement. This campaign commenced with Respondents' arrest of a Maersk vessel and their prosecution in Panama Courts of claims which were undeniably subject to New York arbitration. The Panamanian Supreme Court, after protracted litigation which forced Maersk to unnecessarily incur substantial legal fees and costs, vindicated Maersk's right to compel Respondents to arbitrate in New York. This Court, it is respectfully submitted, cannot condone Respondents' latest assault on the parties' arbitration agreement and cannot permit Respondents to frustrate the parties' intent to arbitrate pursuant to the SMA Rules.

Point IV

RESPONDENTS' APPOINTMENT OF MR. STARK TO SERVE AS THEIR
ARBITRAL NOMINEE CONSTITUTES A BREACH OF THE AGREEMENT TO
ARBITRATE AND GIVES RISE TO A CAUSE OF ACTION UNDER §§4 AND 5 OF THE
F.A.A. AND ALTERNATIVELY UNDER §10 OF THE F.A.A.

As noted above, Sections 4 and 5 of the F.A.A. explicitly grant a party aggrieved by a second party's failure to arbitrate under a written agreement the right to petition this Court for an order directing that the arbitration proceed "in the manner provided for in the agreement". Here, because SMA Rule Section 8 was specifically incorporated by the parties, Respondents appointment of Mr. Stark entitles Petitioner to immediate relief under the Act. *See, e.g.* Maria Victoria Naviera SA v. Cementos Del Valle SA, 759 F. 2d 1027 ( 2d Cir. 1985).

Maersk is well aware of the line of cases in this district, including Aviall, Inc. v. Rider System Inc., 110 F.3d 892 (2d Cir. 1997), in which the Second Circuit held that, as a general rule, a challenge to an arbitrator's suitability to serve can only be made **after** issuance of the arbitral award. This line of cases, however, is in the context of vacation of an award under §10 of the F.A.A. due to, for example, evident partiality or corruption in the arbitrators. Furthermore, a close reading of the Aviall decision reveals that the Second Circuit recognized limited situations in which a district court may intervene even before an award has been rendered: "an agreement to arbitrate before a particular arbitrator may not be disturbed unless the agreement is subject to attack under general contract principles 'as exist in law and equity.'" 110 F.3d at 895. The "touchstone" in the analysis undertaken by a district court in determining whether it must intervene before an award is issued is that "the arbitrator's relationship to one party was undisclosed or unanticipated and unintended, thereby invalidating the agreement." 100 F.3d at 896. The Aviall Court cited with approval such decisions as Erving v. Virginia Squires Basketball Club, 349 F. Supp 716 (E.D.N.Y. 1972), aff'd, 468 F.2d 1064 (2d Cir. 1972); Masthead Mac Drilling Corp. v.

Fleck, 559 F. Supp. 854 (S.D.N.Y. 1980); and Cristina Blouse Corp. v. Int'l Ladies Garment Workers' Union, Local 162, 492 F. Supp. 508 (S.D.N.Y. 1980), as examples where judicial intervention prior to an award was necessary to prevent the parties' intent to submit their dispute to a neutral expert from being frustrated. In Aviall, District Judge Mukasey, whose decision was affirmed on appeal, noted that a pre-award basis for removing an arbitrator exists "when the court concludes that one party has deceived the other, that unforeseen intervening events have frustrated the intent of the parties, or that the unmistakable partiality of the arbitrator will render the arbitration a mere prelude to subsequent litigation." Aviall, Inc. v. Ryder System, Inc., 913 F. Supp. 826, 836 (S.D.N.Y. 1996).[3]

For instance, in Metropolitan Property and Casualty Ins. Co. v. J.C Penney Casualty Ins. Co., 780 F. Supp. 885 (D. Conn. 1991), a case cited by Judge Mukasey as an example of pre-award removal of an arbitrator under Section 10 of the F.A.A., the Petitioner alleged that the Respondent's appointed arbitrator had: (a) traveled to Dallas, prior to being selected as an arbitrator by Respondent, where he engaged in *ex parte* meetings with Respondent's officials about the pending arbitration, discussed the merits of Respondent's case and accepted "hospitality" from Respondent without giving notice to Petitioner; (b) received documentary evidence from Respondent regarding "material facts of dispute" prior to being selected to the panel and without giving notice to Petitioner; (c) attempted to discuss the substance of the *ex parte* communications with the arbitrator appointed by the Petitioner prior to the selection of the third arbitrator; and (d) engaged in deliberation and considered material evidence received from Respondent prior to the selection of the full arbitration panel. 780 F. Supp. at 890. Based on these facts, the district court held that Petitioner had established "arbitrator misconduct." 780 F. Supp. at

---

[3] In Aviall, unlike in the case here, the Petitioner was fully aware of the arbitrator's relationship with the Respondent when the contract containing the arbitration agreement was signed by the parties and it was clearly contemplated in the agreement that the arbitrator would indeed adjudicate the parties' dispute. 110 F.3d at 896.

893. In rejecting Respondent's argument that Petitioner was entitled to challenge the arbitrator's bias only after an award had been rendered and in recognizing that Petitioner would undoubtedly seek to vacate the award in the future, the court stated:

> In light of this reality, it simply does not follow that the policy objective of an expeditious and just arbitration with minimal judicial interference is furthered by categorically prohibiting a court from disqualifying an arbitrator prior to arbitration. Here, the parties will not only suffer the delay produced by litigation seeking to vacate the award after arbitration, but risk the additional loss of time and money if the court finds in [Petitioner's] favor. Should [Respondent] prevail on the merits of its claim and the court follow [Respondent's] approach of granting relief only after arbitration concludes, [Petitioner] would be entitled to vacate the award and the parties will then have to go through the entire arbitration process all over again before a different arbitration panel. Under these circumstances, it seems senseless to require both parties "to submit to a prolonged, costly proceeding . . . [when] this unfair burden can readily be avoided upon proof, in this action of bias and collusion."

780 F. Supp. at 894 (citations omitted). Thus, under the facts of this case, an alternative basis under Section 10 of the F.A.A. exists establishing that Mr. Stark should be disqualified as an arbitrator.

On the current Petition, this Court need not reach the issue under Section 10 because a basis of relief exists under Section 4 and 5 of the F.A.A. on the independent ground that the parties have specifically agreed as a term of the contract that persons such as Mr. Stark, who have obtained detailed prior knowledge of the dispute from a party, may not be permitted to serve as arbitrator. Mr. Stark's attendance at the August 15, 2001 meeting with Maersk, his discussions on behalf of Respondents, and his numerous meetings and telephone calls with Mr. Haito and Respondents' counsel, clearly render his subsequent appointment as arbitrator by Respondents a gross breach of the agreement to arbitrate. Accordingly, this court is well within its authority to

disqualify Mr. Stark and to direct Respondents to appoint an alternative arbitrator, who has no prior knowledge of the disputes.[4]

The underlying arbitration clause permits Petitioner to appoint an arbitrator on Respondent's behalf if Respondents fail to appoint an arbitrator within twenty days of Petitioner's appointment. Petitioner therefore requests that, in the event Respondents fail to appoint an alternative arbitrator within twenty days of the Court's order sought herein, Petitioner's be allowed to appoint a second arbitrator on Respondents' behalf.

### Point V

### MAERSK IS ENTITLED TO ATTORNEYS' FEES

Maersk should be awarded its attorneys' fees in preparing this Petition, which has been made necessary by Respondents' unreasonable failure to withdraw their nomination of Mr. Stark, who is patently unqualified under the SMA Rules and the parties arbitration agreement to serve in the capacity of arbitrator. This Court has the power to award attorneys' fees whenever it determines that a party has acted wrongfully and in bad faith, and that standard has been met in this case. Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse, 996 F.2d 506, 521 at n.2 (2d Cir. 1993) (citing Ingersoll Milling Machine Co. v. M/V Bodena, 829 F.2d 293, 309 (2d Cir. 1987), Seguros Banvenez, S.A. v. S/S Oliver Drescher, 761 F.2d 855, 861-62 (2d Cir. 1985), cert. denied, 484 U.S. 1042 (1988)) ("[T]he general rule is that the award is discretionary with the district judge upon a finding of bad faith"); see also Vaughan v. Atkinson, 396 U.S. 527, 530-31 (1962) (award

---

[4] Maersk's challenge is thus aimed at the heart of the express arbitration agreement entered into by the parties and the intent of the parties in explicitly subjecting that agreement to SMA Rules. Maersk seeks the Court's intervention simply to direct Respondents to honor the terms of the arbitration agreement. That Mr. Stark's partiality is so egregious in the instant case merely reinforces Maersk' position that Respondents' appointment is unequivocally intended to frustrate the parties' intent to arbitrate pursuant to SMA Rules. This court cannot condone Respondents' conduct, especially in light of Respondents' procedural shenanigans in Panama to avoid the inevitable arbitration with Maersk.

NYDOCS1/278863.1                                14

of costs in admiralty action found appropriate where losing parties were "callous in their attitude, making no investigation of libellant's claim .... [L]ibellant was forced to hire a lawyer and go to court to get what was plainly owed him under the laws that are centuries old," and where the "default was willful and persistent").

## CONCLUSION

For all the foregoing reasons, Mr. Stark should be disqualified from serving as an arbitrator and Respondents should be directed to appoint a qualified arbitrator, having no prior knowledge of the dispute in accordance with the arbitration agreement they entered with Maersk, within 20 days of the Order disqualifying Mr. Stark, failing which Maersk should be permitted to appoint an arbitrator on Respondents' behalf. Maersk should be given such other, further and different relief, including but not limited to its attorneys' fees and costs in preparing this Petition, as the Court may deem just and proper in the premises.

Dated: New York, New York
       February 28, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Petitioner
A.P. MOLLER-MAERSK A/S

By: _____
Don P. Murnane, Jr. (DM 3639)
Manuel A. Molina (MM 1017)
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax