439-01/DPM
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Petitioner A.P. MOLLER-MAERSK A/S
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Don P. Murnane, Jr. (DM 3639)
Manuel A. Molina (MM 1017)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

A.P. MOLLER-MAERSK A/S,

                              Petitioner,

    - against -

AGROWEST S.A., DOSVALLES S.A., AND
COMEXA S.A.,

                              Respondents.
-------------------------------------------------------------x

JUDGE BATTS
07 CV 1750

07 CV _____ ( )

DECLARATION OF
AOGU ANDREW TSUKAMOTO
PURSUANT TO 28 USC §1746

    AOGU ANDREW TSUKAMOTO, pursuant to Title 28 U.S.C. §1746, hereby declares and says the following under penalty of perjury:

    1.     I am the Senior Director and Counsel for Maersk Inc.'s Risk and Claims Management Department, which is a department within Petitioner A.P. MOLLER-MAERSK A/S. A.P. Moller-Maersk A/S was established in June 2003 as the result of the merger between Dampskibsselskabet at 1912 Aktieselskub, and Aktieselskabit Dampskibsselskabit Svendborg, which prior to the merger conducted business under the trande name "A.P. Moller-Maersk Sealand," and currently conducts business under the trade name "Maersk Line". I shall refer to Petitioner as "Maersk" hereinafter.

    2.     I am familiar with the facts and circumstances which give rise to the instant Petition, as well as the underlying facts which pertain to the disputes which have arisen between

NYDOCS1/277916.1

Maersk and Respondents in connection with performance of the marine Service Contract agreement (No. 6591) between Maersk and Agrowest dated December 15, 2000, a signed copy of which is attached hereto as "**Exhibit 1**".

3. Insofar as the contents of this Declaration are within my own knowledge, they are true. Insofar as the contents of this Declaration are not within my own direct knowledge, they are true to the best of my information and belief.

4. I have read and adopt herein by reference the contents of the accompanying Petition which seeks *inter alia* an order compelling Respondents to arbitrate in accordance with the terms of the Service Contract agreement, namely the disqualification of Mr. J. David Stark as Respondents' arbitral nominee.

5. After the disputes under the Service Contract arose, I was contacted by New York counsel for Respondent Agrowest, Peter D. Clark of the law firm of Clark, Atcheson & Reisert, L.L.P. Attached as "**Exhibit 2**" to this declaration is a telefax received from Mr. Clark on July 13, 2001 in which Mr. Clark advised that Agrowest's President, Mr. Manuel Haito (who was copied on the telefax) was requesting a meeting with me to discuss the disputes which had arisen under the Service Contract. In that telefax, Mr. Clark stated that the dispute was subject to New York Arbitration in accordance with the rules of the Society of Maritime Arbitrators and provided a summary claim statement of the amounts which Mr. Haito claimed as damages in connection with the dispute. (Originally, a proposal had been made for Mr. Haito to meet with me to discuss the possible settlement of separate cargo claim disputes, and the purpose of Mr. Clark's telefax of July 13 was to propose expanding the discussion to include the Service Contract dispute.) The proposed date for the meeting was August 1, 2001.

6. The meeting was subsequently adjourned to August 15, 2001, and on that day, Mr. Haito appeared at my office at Giralda Farms, Madison, New Jersey with a team of four representatives including two attorneys from Mr. Clark's firm (Mr. Clark and Richard Reisert), attorney John McConnell (an attorney not associated with the Clark Atcheson firm who worked for Mr. Haito on cargo claims), and a fourth individual, Mr. J. David Stark of J. D. Stark & Associates Inc. Mr. Stark was identified to me as a friend of Mr. Haito's who conducted various agricultural businesses based in Panama from an office in Brooklyn. A copy of Mr. Stark's business card, delivered to me by him that day, is attached as "Exhibit 3".

7. During the meeting, Mr. Haito together with his lawyers and Mr. Stark presented Agrowest's position with respect to the merits of the disputes which had arisen. Mr. Haito, together with counsel and Mr. Stark, vigorously argued Agrowest's position to me for more than two hours, and presented, in detail, the nature of Agrowest's purported claims under the Service Contract including purported delays in cargo delivery, purported failures to furnish sufficient equipment for performance of the Service Contract and issues concerning claims handling. The specific aspects of the dispute were discussed in detail and it was clear that the presentation by Mr. Haito and his representatives, including Mr. Stark, had been well prepared in advance.

8. At the conclusion of the meeting on August 15, I advised Mr. Haito and his entourage (including Mr. Stark) that I would look into his complaints and discuss his presentation with Maersk's management while at the same time reserving Maersk's rights.

9. After reviewing the matter, I wrote to Mr. Haito on August 27, 2001 and formally responded to his claims and demands. A copy of my telefax of August 27 is attached as "Exhibit 4".

10. In my August 27, 2001 letter I advised that Maersk denied responsibility for the alleged wrongs that Mr. Haito asserted Maersk had committed. While mentioning that Maersk had already settled or offered to settle various independent cargo claim disputes, Maersk declined any responsibility or liability for the balance of the claims Agrowest was asserting, including those under the Service Contract.

11. Approximately ten months later, on July 4, 2002, Agrowest, acting through local Panamanian attorneys, commenced maritime legal proceedings in the Second Maritime Court of Panama and arrested the M/V MAYVIEW MAERSK, a Maersk vessel, at the Panama Canal. I was involved in arranging to provide alternative security to serve *in lieu* of the vessel, on a without prejudice basis, which allowed the vessel to be released from arrest, and also in retaining local attorneys, Messrs. Morgan & Morgan, to defend Maersk's interests in the Panama lawsuit.

12. As noted in the accompanying Petition, the Panama lawsuit, which was subsequently prosecuted by Respondents in violation of the arbitration clause contained within the Service Contract agreement, sought recovery on claims purportedly arising under the Service Contract.

13. The Service Contract arbitration clause incorporated the Society of Maritime Arbitrators Rules, including without limitation Section 8 which requires that "no person shall serve as an Arbitrator…who has acquired from an interested source detailed prior knowledge of the matter in dispute."

14. By telefax on September 20, 2002, I sent Agrowest (to the attention of Mr. Haito and his colleague, Samuel Torres Arteaga) Maersk's demand for arbitration under the arbitration clause contained within the Service Contract. In the demand, I advised that Maersk was

appointing as its arbitrator Mr. James E. Mercante.[1] I also advised that, pursuant to the terms of the arbitration clause, Agrowest was required to appoint a second arbitrator within twenty days, failing which Maersk would appoint a second arbitrator on Agrowest's behalf. A copy of my letter of September 20, 2002 is attached as "**Exhibit 5**".

15. On October 9, 2002, I received a telefax from Agrowest, which is attached hereto as "**Exhibit 6**", "rejecting" Maersk's demand for arbitration and, *inter alia*, conditionally appointing Mr. J. David Stark of J.D. Stark & Associates Inc. as Agrowest's arbitrator - the same person who was a personal friend of Agrowest's President Mr. Haito and who had appeared on Agrowest's behalf at the discussions in my office on August 15, 2001. Mr. Stark clearly had obtained information concerning Agrowest's claims in this matter from Agrowest directly and therefore was obviously unfit to serve as an arbitrator in this dispute under the agreement/SMA Rules.

16. On October 15, 2002 I replied by telefax and email to Mr. Haito and Mr. Arteaga addressing the comments contained in their telefax of October 9 and specifically pointing out that Mr. Stark had acted as Agrowest's representative during the meeting at my office on August 15, 2001 and was therefore unfit to serve as arbitrator. I called upon Agrowest immediately to withdraw the nomination of Mr. Stark and to appoint a substitute nominee who was neutral in the matter and suitably qualified to serve. A copy of my letter of October 15 is attached hereto as "**Exhibit 7**".

17. I thereafter received no response to my telefax of October 15, and the matter proceeded before the Panama courts ultimately resulting in a decision from the Panama Supreme Court enjoining the matter from proceeding on the merits in Panama and ordering the parties to

---

[1] Agrowest has voiced no objection and has made no attempt since Maersk's appointment of Mr. Mercante on September 20, 2002 to challenge Mr. Mercante's fitness to serve as an arbitrator in this matter.

proceed to arbitration at New York in accordance with the arbitration clause contained in the Service Contract.

18. The SMA Rules, which the parties incorporated into the Service Contract arbitration clause as specific terms and conditions governing the agreement to arbitrate, unequivocally state that a person who has acquired from an interested source detailed prior knowledge of the matter in dispute "shall not serve as an Arbitrator." It is clear from Mr. Stark's attendance at my office as an advocate for Respondents on August 15, 2001 that he had received detailed information concerning the claim in dispute from Agrowest prior to his appointment in October 2002. In addition, legal bills which Respondents subsequently submitted to the Panama court evidence numerous meetings and discussions about the dispute between Mr. Stark, Agrowest's President, Mr. Haito, and Agrowest's New York attorneys. (See the Murnane Affidavit which accompanies this Petition.)

19. Accordingly, Mr. Stark's nomination as arbitrator falls squarely within the prohibition agreed to between the parties, and Maersk therefore requests an order from the court disqualifying Mr. Stark from serving and ordering that a substitute arbitrator, having no prior knowledge of the facts of this dispute, be appointed so that the arbitration can proceed in accordance with the parties' agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 26, 2007
Madison, New Jersey

_____
AOGU ANDREW TSUKAMOTO