# EXHIBIT 1

JUL-18-02  10:55      05-MORGAN 2 :    AN              +50/2657700      T-106  P 07/16  F-551



# MAERSK SEALAND

PART I

A.P. MOLLER – MAERSK SEALAND
SERVICE CONTRACT

Essential Terms Publication: Service Contract Tariff No. MAEU
Service Contract Tariff No. Service Contract No. ____
Tariff of General Applicability: No(s) MAEU

This Service Contract (hereinafter "Contract") is made by and between A.P. MOLLER –
MAERSK SEALAND (hereinafter "MAERSK SEALAND" and the party(ies) defined
on the signature page hereto (hereinafter "Shipper"), whereby the parties mutually agree
as follows:

Commencement:        Dec 16th, 2000
Expiration :          Europe Destinations : March 31 st, 2002
                      US destinations : Dec 15 th 2001

Commodity(ies):       Fresh Mango
                      Fresh Mango
                      Fresh Watermelon

Minimum Quantity
Commitment:           300 FFE

Geographic Scope:
Origin:               Paita, Peru

Destinations:         Algeciras, Spain
                      North Europe Ports
                      ( Felixstowe, Antwerp, Rotterdam, Le Havre )
                      Long Beach, USA
                      Newark, USA
                      Miami, USA

MAERSK PERU S.A.
Av. Canaval y Moreyra 492, Piso 13, San Isidro, Lima 27 - Perú
Teléfono: 442-7287 - 422-6344   Fax (51-1) 422-4313

CARREIRA-PITTI P.C. ABOGADOS

Commodity Rates:

Pnita/ Algeciras, Spain          USD4,240/40'rf   Flat BAF (USD120/40 Dref)

Pnita/ North Europe Ports        USD4,380/40'rf   Flat BAF (USD120/40 hrsf)

Pnita / Long Beach               USD4,300/40'rf   Flat additionals (If applicable)

Pnita / Miami or Newark          USD4100/40'rf    Flat BAF (USD200 /40 hrsf)


Service Commitment:

MAERSK. SEALAND agrees to make available during the terms of this contract, vessel
space adequate to carry (4) the MQC of cargo and (5) at its option, any additional cargo
tendered by the Shipper during the term thereof. The Shipper agrees to give (4) days
booking notice if possible, but in no event less than two (2) days notice to MAERSK
SEALAND for the carriage of its cargo hereunder.


Liquidated Damages for Non-Performance, If Any:

Should Shipper, for any cause other than a cause covered by Force Majeure Term hereof,
not meet the minimum cargo quantity commitment set forth in Minimum Quantity Term
hereof, Shipper and the named affiliates shall jointly and severally liable to the carrier,
for liquidated damages and all other obligations of Shipper under this contract. Shipper
and the carrier agree that the measure of such liquidated damages for Shipper's non-
performance shall be:
$500 per TEU of refrigerated cargo committed, but not shipped.


Shipper's Status Certification and Affiliates, If Any:

In accordance with FMC Regulation 46 C.F.R. Section 530 6,
Shipper hereby certifies its status and th
at of its affiliates as:
_____X_____  Owner of Cargo
_____  Shippers' association
_____  Non-Vessel operating common carrier (NVOCC)
_____  Other (specify status)

If status is NVOCC, Shipper certifies by execution of this contract that any such
NVOCC's have tariff(s) and bond(s) on file with the FMC in full compliance with FMC
regulations and that copies of tariff pages reflecting same will be provided.



**Records:**

The shipment records to support this service contract are the bills of lading. For the purpose of volume calculation, shipment shall be regarded as having been shipped according to the date of receipt of cargo.

Shipper will be assigned a SC# and RT# which must be referenced on each bill of lading under this service contract. No shipment which does not bear the SC# and RT# shall be used to satisfy any requirements of this contract. In order for shipment to qualify, the name of the Shipper must appear in full style on the bill of lading as either the Shipper or Consignee.

In order to substantiate that the Shipper has met this minimum volume requirement as stated in Minimum Quantity Term, copies of bills of lading of each shipment must be submitted on a quarterly basis by the Shipper to the Carrier's office within thirty (30) days of the expiration of this contract, or carrier will supply reports.

**Other Provisions of the Contract:**

Please refer to the other terms and sub-terms herein.

It is mutually agreed that this Contract shall be performed in accordance with the provisions consisting of Part I and the terms and conditions set forth in Part I, Part II Terms and Conditions filed in Rule 100 of governing tariff there.

In witness whereof, the parties have executed this Contract through their responsible representatives duly authorized as of the date hereinafter written.

**Contract Parties / Signatories:**

Carrier:
Maersk Inc. as Agents for A.P. MOLLER – MAERSK SEALAND
Signatory            :
Signature Date       :

Shipper:
Account Name         :       Agrowest SA          AGROWEST, S.A.
Signatory            :       Samuel Torres
Signature Date       :       DEC 15, 2000         ING. SAMUEL TORRES ARTEAGA
                                                  GERENTE GENERAL

**Records:**

The shipment records to support this service contract are the bills of lading. For the purpose of volume calculation, shipment shall be regarded as having been shipped according to the date of receipt of cargo.

Shipper will be assigned a SC# and ET# which must be referenced on each bill of lading under this service contract. No shipment which does not bear the SC# and ET# shall be used to satisfy any requirements of this contract. In order for shipment to qualify, the name of the Shipper must appear in full style on the bill of lading as either the Shipper or Consignee.

In order to substantiate that the Shipper has met this minimum volume requirement as stated in Minimum Quantity Term, copies of bills of lading of each shipment must be submitted on a quarterly basis by the Shipper to the Carrier's office within thirty (30) days of the expiration of this contract, or carrier will supply reports.

**Other Provisions of the Contract:**

Please refer to the other terms and sub-terms herein.

It is mutually agreed that this Contract shall be performed in accordance with the provisions consisting of Part 1 and the terms and conditions set forth in Part II Part II Terms and Conditions found in Rule 100 of governing tariff manu-

In witness whereof, the parties have executed this Contract through their responsible representatives duly authorized as of the date hereinafter written.

**Contract Parties / Signatories:**

Carrier:
Maersk Inc. as Agents for A.P. MOLLER – MAERSK SEALAND
Signatory          :
Signature Date   :

Shipper:
Account Name    :    Agrowest SA
Signatory          :    Samuel Torres
Signature Date   :    DEC 15, 2000

AGROWEST, S.A.

ING. SAMUEL TORRES ARTEAGA
GERENTE GENERAL

PART II

## TERMS AND CONDITIONS

### 1. Shipper

The term "Shipper" means the entity or entities signing this Contract and affiliates and subsidiaries of such entity or entities named on the signature page hereof. The person signing this Contract on behalf of the Shipper warrants and represents that he/she has authority to enter into this Contract on behalf of the Shipper and its affiliates/subsidiaries listed on the signature pages.

### 2. Governing Tariff(s)

The term "governing tariff(s)" means tariffs (including rates, rules, regulations, charges, surcharges and arbitraries/additions therein) published by MAERSK SEALAND or by any conference or agreement to which MAERSK SEALAND belongs, governing the carriage of cargo in the trades covered by this Contract as set forth in Part I of this Contract. All cargoes moving under this Contract, unless otherwise provided herein, shall be subject to the governing tariff(s).

### 3. Contract Term

Commencement and termination of this contract is as per Part I.  For the purpose of determining whether or not a cargo movement occurs during the term of the Contract, the pertinent date shall be the receipt of cargo date entered by MAERSK SEALAND on the Bill of Lading.

### 4. Cargo and Scope

This Contract covers shipments by the Shipper carried by MAERSK SEALAND of the commodities identified in Part I of this Contract in the trade(s) as also described in Part I of this Contract.

In order for cargo to qualify for rates and terms set forth in this Contract, including, without limitation, being counted towards the Minimum Quantity Commitment set forth in Part I of this Contract (see also Article 5 hereto), the Shipper must appear as shipper/exporter or consignee on the applicable Bill of Lading; provided, however, that in instances where Shippers appear as "Notify Party" on the Bill of Lading, and MAERSK SEALAND, in its sole discretion, determines that there is sufficient evidence, or there are other indicia, permitting it to conclude that the cargoes are owned by, consigned to and moving for the direct account of Shipper, such cargo shall also qualify under the rates and terms set forth herein; and provided further that the provisions of this paragraph shall in no way limit or qualify the rights and obligations set forth in Article 13 hereof.

-2-

**5. Minimum Quantity Commitment**

The Shipper agrees to tender for shipment on vessels of MAERSK SEALAND during the term of this Contract the Minimum Quantity Commitment (hereinafter "MQC") of cargo specified in Part I of this Contract.

CFS cargo will count towards the MQC; however, cargo will be rated at the tariff rate published at the time of shipment. 55 cubic meters shall equal 1 40' container (FEU) for cargo moving on a CFS basis.

**6. Contract Rates**

The rates applicable to all cargo carried under this Contract shall be the commodity rates set forth in Part I of this Contract. In addition, except as otherwise provided for in Part I of this Contract, said rates shall be subject to all other rules, charges, surcharges, arbitraries/additionals in MAERSK SEALAND's governing tariff(s) at the time of shipment.

**7. Verification of Contract Carryings**

Each original Bill of Lading governing individual shipments under this Contract and all copies thereof shall bear the notification of the MAERSK SEALAND S.C. No. as filed with the FMC.

The Shipper and MAERSK SEALAND agree that Bills of lading which do not bear the notation specified herein shall not be counted towards the MQC, unless the shipper produces evidence clearly indicating an error of omission, and proof sufficient to justify inclusion under the Contract.

**8. Force Majeure**

In the event of Force Majeure circumstances, the Shipper or MAERSK SEALAND shall notify the other party in writing of the existence of such circumstances and of the effect of same on its ability to perform its obligations under this Contract.

-3-

Upon receipt by one party of notice of Force Majeure conditions from the other party, the parties shall be excused from their obligations under this Contract to the extent of and for the duration of the disability. For purposes hereof, the term "Force Majeure" shall mean and include, without reservation or restriction, Strike, Work Stoppages,

Lock-outs or exceptional circumstances arising from the threat thereof; Acts of God, State or the Public Enemy, including but not limited to War, Hostilities, Riots, Civil Disorder and Insurrection, Embargo, Governmental Restraints or other similar disruptions or interference's with Trade; Marine Disaster, Fire and or other casualty.

In addition to these causes of force majeure the lack of availability of the marine resource or giant squid at peruvian sea.

Upon cessation of Force Majeure circumstances, the Contract obligations shall be reinstated and the MQC may be adjusted accordingly.

9.   Bills of Lading

The terms and conditions of the carriers bill of lading covering individual shipments shall apply to shipments hereunder. The rates and charges applicable to such shipments are set forth in this contract and shall not be overriden by the bill of lading provided, however, that in the event any provision in Carriers bill of lading which limits or governs Carriers liability for damages to persons or property (including cargo), delays, misdelivery, or any other provision of the bill of lading rendered by applicable law is or are in conflict with the contract, the bill of lading shall prevail.

10.   Liability

Exclusive of liability under MAERSK SEALAND's Bills of Lading covering individual shipments, the Shipper and MAERSK SEALAND agree that all liability under this Contract shall be limited to the liability specified under the agreed service commitments and liquidated damages in Essential Terms.

11.   Assignment

The Shipper may not assign this Contract, including any or all of its rights or liabilities hereunder, or otherwise permit any other person or entity, directly or indirectly to utilize services, rates, or other terms provided by MAERSK SEALAND, without the prior consent of MAERSK SEALAND

-4-

## 12.  Written Notice

Written notice shall be deemed to have been duly served on the Shipper if delivered in person or be registered mail, courier or by facsimile (fax) or telexed to the Shipper's address on the signature page of this Contract or, if such has been changed subsequent to the execution of this Contract, to the last business address know to MAERSK SEALAND. Written notice shall be deemed to have been duly served on MAERSK SEALAND if delivered in person or by registered mail, courier or by facsimile (fax) or telex to MAERSK SEALAND's office on the signature page of this Contract.

## 13.  Governing Essential Terms Publication

The essential terms of the Contract which are required to be published by Section 8© of the Shipping Act of 1984, as amended, are set forth in the Essential Terms Publication mentioned in Part I.

## 14.  Contract Records

MAERSK SEALAND's Bills of Lading/manifest Data and EDP reports, the Shipper's statements of cargo shipped under this Contract, written communications issued by MAERSK SEALAND regarding such statements, and Force Majeure correspondence and notices, shall constitute the records supporting performance under this Contract, and shall be maintained by MAERSK SEALAND's designated agent.

## 15.  Termination

In the event this Contract is terminated by mutual agreement of the parties prior to the end of the Contract terms, the parties agree that all cargoes previously carried under this Contract shall be re-rated according to the otherwise applicable tariff provisions of MAERSK SEALAND in effect at the time of shipment.

MAERSK SEALAND may, at any time after the Shipper has met the MQC as set forth in Part I of this Contract, terminate the Contract or any other portion thereof, effective 30 (thirty) days after written notice to the Shipper.

-5-

**16. Disputes**

In case of a dispute arising under or relating to this Contract, the Shipper and MAERSK SEALAND each agree to submit the matter under dispute to arbitration in the City of New York or to such other location as the parties may agree. Either party hereto may call for arbitration by giving notice thereof in accordance with Article 14 of this Contract. Each party shall appoint an arbitrator. In the event either party fails to appoint an arbitrator within twenty (20) days the other party, without further notice, may appoint a second
arbitrator with the same force and effect as if said second arbitrator had been appointed by the other party. The two arbitrators so chosen shall elect a third arbitrator. The three arbitrators are to be commercial men familiar with ocean shipping. In the event the two arbitrators so chosen are unable to agree upon the appointment of a third arbitrator within thirty (30) days, the third arbitrator shall be appointed by the Society of Maritime Arbitrators.
The decision of a majority of the arbitrators shall be binding on the parties. The arbitration shall be held under and pursuant to the terms and procedures of the United States Arbitration Act and in accordance with the rules of the Society of Maritime

Arbitrators. The award made in pursuance to this article may include attorney's fees and expenses and judgement may be entered upon any award hereunder in a court of competent jurisdiction.

**17. Applicable Law**

This Contract shall be subject to the Ocean Shipping Reform Act of 1998 and shall otherwise be construed and governed by the laws of the State of New York.

**18. Confidentiality**

Each party agrees to keep the identity of the other party confidential from third parties, except as it must be disclosed to the Federal Maritime Commission (FMC) in a confidential contract filing, or with the consent of the other party. In addition, terms and conditions of this contract that relate to third parties such as, but not limited to freetime, detention, demurrage, etc... may be shared on an "as needed" basis for carrier to collect the charges.

Disclosure of confidential information by persons formerly employed by MAERSK SEALAND and Shipper respectively, after their employment with MAERSK SEALAND and Shipper, shall not constitute a breach of MAERSK SEALAND's and Shipper's confidentiality obligations above.

-6-

**19. Entire Contract**

This contract constitutes the full understanding of the parties and complete and exclusive statement of the terms of the Contract. No modifications of this Contract or waiver of any of its terms or conditions shall be of any force or effect unless made in writing and signed by the parties claimed to be bound thereby.

# MAERSK SEALAND

## A.P. MOLLER – MAERSK SEALAND
### Service Contract Amendment

A.P. MOLLER – MAERSK SEALAND and AGROWEST, S.A. the parties to Service Contract 6591, hereby agree to the following amendment(s):

Amendment #:

**TERM 6:      RATES OR RATES SCHEDULE(S)**

Rates to the United States are inclusive of BAF.

The foregoing amended terms of Service Contract 6591 shall be effective on __(January 29th, 2001)__ or the date they are filed with the Federal Maritime Commission, whichever is later. All other terms and conditions of Service Contract 6591 shall remain unchanged.

### Shipper Information

Account : AGROWEST S.A

Print Name  SAMUEL TORRES ARTEAGA

Date: __JANUARY 29TH, 2001__

AGROWEST, S.A.

ING. SAMUEL TORRES ARTEAGA
GERENTE GENERAL

### Carrier Information

Maersk Inc. as Agents for
A.P. MOLLER – MAERSK SEALAND

Carrier Signature: _____

Print Name: _____

Date _____

MAERSK SEALAND

A.P. MOLLER -- MAERSK SEALAND
Service Contract Amendment

A.P. MOLLER – MAERSK SEALAND and
AGROWEST, S.A. the parties to Service Contract
6591, hereby agree to the following amendment(s):

Amendment # 1 _____:

TERM 6:    RATES OR RATES SCHEDULE(S)

Rates to the United States are inclusive of BAF.

The foregoing amended terms of Service Contract
6591 shall be effective on __(January 29th,
2001)__ or the date they are filed with the Federal
Maritime Commission, whichever is later. All other
terms and conditions of Service Contract 6591 shall
remain unchanged.

**Shipper Information**

Account : AGROWEST S.A.

Print Name _SAMUEL TORRES ARTEAGA_

Date: __JANUARY 29TH, 2001__

AGROWEST, S.A.

INGº SAMUEL TORRES ARTEAGA
GERENTE GENERAL

**Carrier Information**

Maersk Inc. as Agents for
A.P. MOLLER – MAERSK SEALAND

Carrier Signature: _____

Print Name: _RICHARD F. BOYLE_

Date _____

# EXHIBIT 2

Sen· By:·CLARK, ATCHESON & REISERT;        212 297 0318;        Jul·13·01  3:33PM;        Page 1/3

# CLARK, ATCHESON & REISERT

535 FIFTH AVENUE
NEW YORK, NEW YORK 10017

PETER D. CLARK*
FRANK A. ATCHESON
RICHARD J. REISERT

DEAN W. STEELE
GUY W. HEBERT
ALSO ADMITTED IN:
*NEW JERSEY
*CONNECTICUT

TELEPHONE (212) 297-0257
FACSIMILE (212) 297-0316
INTERNET www.navlaw.com

NEW JERSEY OFFICE
7 OLD YORK ROAD
RANDOLPH, NJ 07869
TELEPHONE (732) 530-0500

CONNECTICUT OFFICE
611 RIVERSIDE AVENUE
WESTPORT, CT 06880
(203) 226-7760

E-MAIL atcheson@navlaw.com

## TELEFACSIMILE TRANSMISSION

July 13, 2001

TO:  Maersk Sealand, NJ                                    (973) 514-5288
     Attn: Andrew A. Tsukamoto, Esq.

CC:  Mr. Manuel Haito                                      011-507-263-6230

FROM:  Peter D. Clark                                      3 Pages

                 Re:        Agrowest / A. P. Moller
                            Service Contract Dispute
                            Contract dated: 12/15/00
                            Claimed amount: $1,478,527.50
                            Your Ref: unknown
                            Our Ref: 146-457-01/PDC/RJR

Dear Andy:

     Further to our facsimile of today's date regarding the cargo claim settlement meeting scheduled for 8/1/01, Mr. Haito is also requesting a brief meeting with you at the conclusion of the settlement meeting in order to discuss the Service Contract (6591) dispute.

     The Service Contract dispute in the amount of $1,478,527.50 (claim statement attached) is primarily based upon Maersk's failure to supply reefer containers per the Service Contract. It is entirely separate from the cargo claim dispute. The Service Contract dispute is subject to New York arbitration in accordance with the Rules of the Society of Maritime Arbitrators and is probably not covered under your P&I.

     Again, we look forward to seeing you on 8/1/01.

Sincerely,

ATCHESON & REISERT;          212 297 0316;          Jul-13-01   3:33PM;          Page 2/3

CLARK, ATCHESON & REISERT

July 13, 2001                                                          Page 2.

Sincerely,
CLARK, ATCHESON & REISERT

Peter D. Clark

## ADDITIONAL DAMAGES BY MAERSK SEALAND TO AGROWEST S.A.

| DESCRIPTION OF DAMAGES | | | | TOTAL AMOUNT US$ |
|---|---|---|---|---|
| **DAMAGES FOR LACK OF SPACE** | | | | |
| - Containers of mangos and watermelons lost in fields | | | | |
| - Gourmet Trading Company | | 26 x | US$ 10,000.00 | 250,000.00 |
| Mango boxes Contracted | 300,000 | | | |
| Mango boxes delivered | 229,796 | | | |
| Difference of Export not supplied | 70,204 | x | US$ 2.00 | 140,408.00 |
| - Del Monte Fresh Produce | | | | |
| Mango boxes Contracted | 300,000 | | | |
| Mango boxes delivered | 205,220 | | | |
| Difference of boxes not supplied | 94,600 | x | US$ 2.50 | 169,800.00 |
| **EXTRA CHARGES NOT AGREED** | | | | |
| (107 containers approx) | | | | |
| - Use of Genset | US$ | 50.00 | | |
| - Seal | US$ | 8.00 | | |
| - Containers blown in | US$ | 25.00 | | |
| - Manipulation | US$ | 30.00 | | |
| - Bill issuing | US$ | 25.00 | | |
| TOTAL | US$ | 148.00 | | 15,840.50 |
| **CONCENTRATION OF VESSELS** | | | | |
| - Cost due to repacking additional cost (Maersk Distribution, S.A.) | | | | 121,000.00 |
| - Cost due to repacking additional cost (Other clients) | | | | 26,000.00 |
| - Differential in index price of the fruit due to the concentration of vessels | | | | |
| - Peni, boxes of mango | | 83,630 boxes | US$ 2.00 | 167,020.00 |
| - Peni, boxes of melons and watermelons | | 32,341 boxes | US$ 3.00 | 97,023.00 |
| - Forward, boxes of melons and watermelons | | 57,727 boxes | US$ 3.00 | 173,181.00 |
| **OTHERS:** | | | | |
| - Additional cost (fax, telephone, overhead), due to the problems generated - origin | | | US$ | 20,000.00 |
| - Finance interest | 2,500,000.00 / 5% months | | 15% int/ann | 185,000.00 |
| - Loss of income Drawback (Mango) | | 5% x | US$ 825,020.00 | 41,251.00 |
| - Loss of income Drawback (Melon y Watermelon) | | 5% x | US$ 250,000.00 | 12,500.00 |
| DAMAGES DUE TO THE COST OF IMAGE WITH CLIENTS AND BANKS; DELAY IN IMPLEMENTATION NEXT SEASON PROGRAM NOT ESTIMATED. | | | | |
| | | | **TOTAL US$** | **1,478,527.50** |

# EXHIBIT 3

# J.D. STARK & ASSOCIATES INC.

46A SIDNEY PLACE

BROOKLYN, N.Y. 11201

---

TEL: 718-625-3479   FAX: 718-858-0092

E-MAIL: davidstark@msn.com

J. DAVID STARK
PRESIDENT                              IMPORT/EXPORT

EXHIBIT 4

August 27, 2001

Ing. Manuel Haito Sahurie
By Fax 511-444-4245
Agrowest, S.A.
Calle Comandante Jose Roman No. 141
Urb. La Aurora, Miraflores, Lima
PERU

By Fax 507-263-6230
Dos Valles, S.A.
Calle 50, Torre Banco Dresoner, Piso #9
Panama
PANAMA

Re: CARGO CLAIMS & BREACH OF CONTRACT CLAIM AGAINST MAERSK SEALAND

Dear Mr. Haito:

We refer to our meeting of August 15, 2001, and formally respond to your demands, which consist of a collection of 43 cargo loss/damage claims and a breach of contract claim arising out of a Service Contract. We have considered every aspect of your allegations and re-examined the facts and our files in light of your presentation.

We deny responsibility for the alleged wrong you assert we committed. However, to the limited extent that we believe we are independently responsible for cargo damage claims, we have either honored them or made reasonable offers. We hereby rescind all offers of settlement on the cargo claims, which you have not accepted; we decline any and all other claims.

This declination is made without prejudice and is not to be considered a waiver of any rights, defenses or limitations available at law or under applicable contracts.

Sincerely,

MAERSK INC.


Andy Tsukamoto
Director & Counsel
Claims Department

/aat
copy:   Messrs. Clark Atcheson & Reisert (Fax 212-297-0316)
        Messrs. Purrington & McConnell (Fax 212-344-4425)

# EXHIBIT 5

MAERSK SEALAND      Fax:9735145784      Sep 20 '02   10:17   P.02

# MAERSK SEALAND

Giralda Farms
Madison Avenue
Madison, NJ 07940-0880
Tel. 973-514-5000





| To: | Mr. Manuel Haito Sahurie<br>Agrowest, S.A. | From: | Andy Tsukamoto<br>Tel. 973-514-5396<br>Fax 973-514-1362 |
|---|---|---|---|
| Fax: | (51) 1 447 7122<br>(51) 1 444 4245 | Date: | September 20, 2002 |
| Phone: | | Pages: 3 | |
| Re: | NOTICE OF ARBITRATION | CC: | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

○Comments:

Please see attached.

A. P. MOLLER INC.



September 20, 2002

By Telefax:  511 447 7122
And email:  west@junin.itete.com.pe
Agrowest, S.A.
Calle Irma Gamero de Planas No. 104
Urb. Las Magnolias
Santiago de Surco (Lima 33)
PERU

By Telefax:  511 444 4245
And email:  west@terra.com.pe
Agrowest, S.A.
Calle Comandante Jose Roman No. 141
Urb. La Aurora-Miraflores (Lima 18)
PERU

Attn:  Mr. Manuel Haito Sahurie, Presidente
        Mr. Samuel Torres Arteaga, Gerente General

RE:  **NOTICE OF ARBITRATION**
     Disputes Arising Between Maersk Sealand and Agrowest Under Service
     Contract No. 6591, Executed by Agrowest on December 15, 2000

Dear Sirs:

On behalf of A.P. Moller-Maersk Sealand (hereinafter "Maersk Sealand"), and pursuant to the express terms of Clauses 12 and 16, Part II of the governing Service Contract no. 6591, executed by your Mr. Samuel Torres Arteaga, Gerente General of Agrowest, S.A., on December 15, 2000 (the "Contract"), we hereby commence arbitration at New York of all disputes which have arisen under or which relate to the Contract, including:

1.    All claims which you have recently filed in violation of the Contract arbitration clause, in the Second Maritime Court of Panama by way of a Complaint submitted by attorneys Carreira-Pitti, P.C. Abagados, dated Panama, June 28, 2002, seeking the amount of U.S. $4,971,038.30 plus costs, interest and expenses;

2.    Maersk Sealand's counterclaim for Agrowest's breach of the Contract including, but not limited to:

      a.    Agrowest's commencement of legal proceedings in Panama in violation of Clause 16, Part II of the Contract requiring arbitration of all disputes at New York, resulting in damages to Maersk Sealand in the form of attorneys' fees, costs, court, and other expenses incurred to date and which Maersk Sealand continues to incur in responding to the Panamanian action, and in seeking to have the Panamanian action stayed pursuant to the agreement to arbitrate;

**MAERSK INC.**
Giralda Farms, Madison Avenue, P.O. Box 880, Madison, NJ 07940-0880, USA
Telephone: 973-514-5000.  Telex: MCI 6733476.  Fax: 973-514-5410
Internet: http://www.maersksealand.dk

MAERSK SEALAND

September 20, 2002
Page 2

     b.    All costs, attorneys' fees, and expenses, incurred by Maersk Sealand to date, and going forward, in connection with the defense of Agrowest's meritless claims under the Contract;

     c.    Maersk Sealand reserves its right to amend its counterclaim in the arbitration to add further and different claims both as to type and quantum.

Maersk Sealand appoints as its arbitrator:

         James E. Mercante
         Rubin & Fiorella, LLP
         90 Park Avenue, 19th Floor
         New York, New York 10016
         Phone:     (212) 953-2381
         Telefax:    (212) 953-2462

Please note that the Contract requires Agrowest, S.A. to appoint a second arbitrator within twenty (20) days of receipt of this Notice, failing which Maersk Sealand shall appoint a second arbitrator with the same force and effect as if the said second arbitrator had been appointed by Agrowest, S.A.

Sincerely,

MAERSK SEALAND

Aogu Andrew Tsukamoto
Director & Counsel
Claims Department

MAERSK SEALAND          Fax:9735145784

MAERSK SEALAND          Fax:9735145784

**\*\* Transmit Conf.Report \*\***

Sep 20 2002   9:48

P. 1

| D.0.7 | Check condition of remote fax. | 0115114477122 |
|-------|-------------------------------|---------------|

## MAERSK SEALAND

Giralda Farms
Madison Avenue
Madison, NJ 07940-0600
Tel. 973-514-5000





| To: | Mr. Manuel Haito Sahuria . Agrowest, S.A. | From: | Andy Tsukamoto Tel. 973-514-5396 Fax 973-514-1362 |
|-----|----|----|----|
| Fax: | (51) 1 447 7122 (51) 1 444 4245 | Date: | September 20, 2002 |
| Phone: | | Pages: 3 | |
| Re: | NOTICE OF ARBITRATION | CC: | |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

Comments:

Please see attached.

MAERSK SEALAND                    Fax:9735145784

## \*\* Transmit Conf. Report \*\*

P.1                                                        Sep 20 2002   9:41

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 0115114444245 | NORMAL | 20, 9:41 | 1'04" | 3 | \* O K | |

### MAERSK SEALAND
Giralda Farms
Madison Avenue
Madison, NJ 07940-0880
Tel. 973-514-5000





| | | |
|---|---|---|
| **To:** Mr. Manuel Haito Sahurie<br>Agrawest, S.A. | **From:** Andy Tsukamoto<br>Tel. 973-514-5396<br>Fax 973-514-1362 | |
| **Fax:** (51) 1 447 7122<br>(51) 1 444 4245 | **Date:** September 20, 2002 | |
| **Phone:** | **Pages:** 3 | |
| **Re:** NOTICE OF ARBITRATION | **CC:** | |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

•Comments:

Please see attached.

EXHIBIT 6

OCT.09'2002 12:40 507 2636230        DOS VALLES PANAMA        #6403 P.001/003

# AGROWEST, S.A.

### FAX

| Calle Cmdte José Román 141-A Urbanización La Aurora, Miraflores Lima – Perú, e-mail agrowest@millicom.com.pe | Telf. (511) 445-6792<br>Fax (511) 444-4245 |
|---|---|

| PARA / TO | DE / FROM |
|---|---|
| Nombre De la Empresa / Company Name:<br>**Maersk Sealand** | Nombre de la persona / Person name:<br>**Manuel Haito – Samuel Torres** |
| A la atención de / Attention:<br>Acgu Andrew Trinkamoto | Fecha / Date:<br>**October 09, 2002** |
| Nº de fax / Fax Nº:<br>**(973) 514-1362** | Nº de Teléfono / Phone number:<br>**" (511) 445-6792** |

| Urgente/ Urgent | Responder/ Reply | Favor Comentar/ Please comment | Favor revisar / Please review | Para su información / For your information | |
|---|---|---|---|---|---|

Incluyendo la portada / total pages, including cover sheet:

**Reference : YOUR NOTICE OF ARBITRATION**

**Please see attached.**

Manuel Haito.                    Samuel Torres

> ✎  Si tuvo algún problema al recibir esta transmisión, por favor llámenos a este número / If you had any problem receiving this transmission, please call back, as soon as possible to this number.

OCT.09'2002 12:40 507 2636230          DOS VALLES PANAMA          #6403 P.002/003

## Agrowest S.A.

*Calle Cmdte José Román 141-A Urbanización La Aurora, Miraflores, Lima-Peru*
*Teléfono (511) 445-6792, Fax (511) 444-4245. email agrowest@millcom.com.pe*

October 9th 2002

By Telefax: 001 (973) 514-1362,
email: namclmtop@maersk.com
and courier:
Maersk Sealand
Giralda Farms, Madison Avenue
P.O.Box 880
Madison, NJ 07940-0880
U.S.A.

Attn.: Mr. Aogu Andrew Tsukamoto
Director & Counsel
Claims Department

RE: NOTICE OF ARBITRATION RECEIVED SEPT.20, 2002 BY FAX.

Dear Sirs:

We acknowledge receiving your message dated September 20, 2002.

We hereby reject the Notice of Arbitration based on the following considerations:

1.   There is no valid agreement as required by The New York Convention and the
     Laws of Peru, a fundamental requirement in the validity of arbitration clauses.

2.   Your Notice of Arbitration has been sent at the time where you have denied all
     allegations in the Complaint filed in Panama before the Second Maritime Court,
     some of which were amended later.

3.-  You have expressly denied in the pleadings filed before the Second Maritime
     Court of Panama that the Service Contract signed by Samuel Torres A. in Peru is a
     valid contract.

4.-  Your Notice of Arbitration challenges the legal authority, under Panamanian Law,
     of the Second Maritime Court of Panama to decide the motion your company filed
     seeking to decline the jurisdiction of said court to arbitration, which we oppose
     since there is no valid agreement as required by law.

5.-  Finally, the Notice of Arbitration indicates your intention to seek via counterclaim
     alleged damages involved in the current litigation in Panama.  We not only reject
     your allegations but point out that in Panama you have not filed a counterclaim
     therefore even in the event that the Second Maritime Court declines its jurisdiction
     to arbitration, no counterclaim has been properly filed and will not be considered
     part of the process to be submitted to arbitration.



*Agrowest S.A.*

*Calle Cmdte José Román 141-A Urbanización La Aurora, Miraflores, Lima-Perú*
*Teléfono (511) 445-6792, Fax (511) 444-4245. e-mail agrowest@millicom.com.pe*

In order to protect our interest not waiving any rights whatsoever, we hereby appoint as arbitrator:

J. DAVID STARK.
J.D. STARK & ASSOCIATES INC.
46A Sidney Place
Brooklyn, New York 11201
New York
Phone  (718) 625-3479
Fax    (718(856-0092

We expressly maintain all of our rights as noted above to seek all legal remedies available.

Sincerely,

AGROWEST S.A.

Manuel F. Naito
President

AGROWEST S.A.

Samuel E. Torres A.
General Manager

cc. Carreira Pitti P.C. Attorneys

# EXHIBIT 7

A. P. MØLLER

 **MAERSK SEALAND**

October 15, 2002

**By Telefax:** 511 447 1222
**And email:** west@junin.itete.com.pe
Agrowest, S.A.
Calle Irma Gamero de Planas No. 104
Santiago de Surco (Lima 33)
PERU

**By Telefax:** 511 444 4245
**And email:** west@junin.itete.com.pe
Agrowest, S.A.
Calle Comandante Jose Roman No. 141
Urb. La Aurora-Miraflores (Lima 18)
PERU

Attn:   Mr. Manuel Haito Sahurie, Presidente
        Mr. Samuel Torres Arteaga, Gerente General

RE:     New York Arbitration of Disputes Arising Between Maersk Sealand and
        Agrowest Under Service Contract No. 6591, Executed by Agrowest on
        December 15, 2000

Dear Sirs:

We refer to your telefax of October 9 in which you seek to "reject" our Notice of Arbitration of
September 20. We note that you have nonetheless appointed Mr. J. David Stark as your
arbitrator. We respond as follows:

A.      *Agrowest's "Rejection" of MSL's Notice of Arbitration*
        *Constitutes an Ongoing Breach of the Service Contract*

We categorically reject each of the five "considerations" listed in your telefax. Your response,
apparently prepared on your behalf by Carrerra-Pitti, P.C. (whom you copy on your telefax), is
entirely without factual or legal basis and constitutes an ongoing breach of your obligation to
arbitrate. Specifically:

1.      Under The New York Convention, Clause 16 of the Service Contract is an entirely valid
        written agreement to arbitrate:

        -       The Service Contract was signed by your Mr. Torres for and on behalf of
                Agrowest, S.A. on December 15, 2000.

MAERSK INC.

Giralda Farms, Madison Ave, P.O. Box 880, Madison, NJ 07940-0880, USA
Telephone: 973-514-5000. Fax: 973-514-5410.
Internet: http://www.maersksealand.com .

MAERSK SEALAND

October 15, 2002
Page 2

- Agrowest is basing its claims in Panama on the very same Service Contract, and, in its pleadings before the Court, Agrowest has adopted the contract as valid and binding on the parties.
- In addition, the parties performed the Service Contract, and such performance constitutes further ratification of the agreement to arbitrate contained in Clause 16.

Under Clause 17, New York law governs; however, please note that Peru, like Panama and the United States, is a signatory to The New York Convention. The New York arbitration clause is therefore enforceable by the Courts of Panama, New York and/or Peru, as the governmental instruments of the signatories to the Convention.

2-4.   As to items 2-4, you have improperly misconstrued our pleadings before the Panama court:

- Contrary to your allegations, we do not challenge the legal authority of the Second Maritime Court of Panama. The Court has jurisdiction to decide the motion to stay the matter in favor of New York arbitration as agreed between the parties. We are, in fact, confident that the Panamanian Court will see through Agrowest's manipulative efforts to circumvent the agreement to arbitrate and will order Agrowest to proceed forthwith to arbitrate in New York. It is for that reason that we have instructed our Panamanian counsel to file the instant motions with the Second Maritime Judge in Panama.

- You are wrong in stating that we have denied in pleadings filed before the Panamanian Court that the Service Contract, as signed by Mr. Torres on December 15, 2000 in Peru, and performed by the parties, is a valid contract. To the contrary, the Service Contract, including the arbitration provision at Clause 16, is entirely valid and controls this dispute.

- We ask you and counsel to kindly refrain from further transparent efforts to improve your weak position in this matter by falsely mischaracterizing our positions before the Court.

5.   As to your comment 5, there is no requirement under the New York Convention, or any law, to submit our counterclaim to the Panamanian Court. Indeed, New York law, which is applicable pursuant to the agreement of the parties under Clause 17, would deem submission of the counterclaim to a Court as a possible waiver of the right to arbitrate. We are fully within our legal rights to include our counterclaim for your unlawful breach of the Service Contract in our demand for arbitration.

The excuses that you have raised as the basis for your purported rejection of our Notice of Arbitration are further evidence of your bad faith refusal to comply with the agreement to arbitrate. We shall, through Panamanian counsel, vigorously oppose your ongoing attempts to distort the evidence in the proceedings in Panama and thereby circumvent the arbitration agreement.


**MAERSK SEALAND**

October 15, 2002
Page 3

### B.    *Nullity of Appointment of Mr. Stark*

#### 1.    Impermissible "Conditional" Appointment

Your purported "conditional" appointment of J. David Stark is further evidence of your bad faith attempts to circumvent the arbitral process. As your counsel should know, *conditional* appointments are not permitted. As a matter of law, your appointment of Mr. Stark is defective.

#### 2.    Mr. Stark's Conflict of Interest and Bias

On August 15, 2001, you, and Mr. Stark *as your representative*, together with three New York attorneys on your behalf (attorneys Clark, Reisert and McConnell) met with us in our offices to present the subject claims. Because Mr. Stark personally participated in the meetings as your advocate and representative, he is biased and predisposed in your favor and cannot be impartial. Accordingly, your appointment of Mr. Stark has no legal effect under applicable governing law. We call upon you immediately to withdraw your nomination of Mr. Stark and to appoint a substitute nominee who is neutral in the matter and suitably qualified to serve.

&#10070;    &#10070;    &#10070;

We view Agrowest's ongoing efforts to frustrate the parties' agreement to resolve this matter by arbitration in New York to be in bad faith. We have thus applied to the Court in Panama to award all attorneys' fees, costs and expenses which we have incurred and will incur in responding to your efforts to circumvent the agreement to arbitrate.

This communication is entirely without prejudice to any and all rights and remedies of A.P. Moller/Maersk Sealand and/or their agents under the Contract and at law.

Sincerely,

Maersk Inc.

Andy Tsukamoto
Director & Counsel
Claims Department